THEMIS ANAGNOST, Petitioner-Appellee, v. GEOFFREY R. LAYHE, Respondent-Appellant (Cook County Officers Electoral Board, Respondent).

First District (3rd Division)   No. 1—92—0581

Opinion filed May 27, 1992.

JIGANTI, J., dissenting.

Burton S. Odelson and Mathias W. Delort, of Odelson & Sterk, Ltd., of Evergreen Park, for appellant.

Michael E. Lavelle, of Oak Park, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

The petitioner, Themis Anagnost (Anagnost), is a licensed attorney over the age of 75 years who filed nomination papers in the Republican primary for the office of supreme court judge in the March 17, 1992, primary election. The respondent, Geoffrey R. Layhe (Objector), is a registered voter who filed objections to those nomination papers by reason of the Compulsory Retirement of Judges Act (Judges Act) requiring automatic retirement at the expiration of the term in which a judge attains the age of 75 (Ill. Rev. Stat. 1989, ch. 37, par. 23.71).

This provision is predicated on the authority granted in the Illinois Constitution that the General Assembly "may provide by law for the retirement of Judges and Associate Judges at a prescribed age." Ill. Const. 1970, art. VI, §15(a).

The Cook County Officers Electoral Board sustained the objections, declared the Anagnost nomination papers invalid and determined that section 1 of the Judges Act imposes an age qualification for candidates seeking judicial office.

Thereafter the petitioner filed a petition for judicial review of the decision of the Cook County Officers Electoral Board, and on February 24, 1992, an order was entered by memorandum opinion reversing the decision of the Board and providing that the petitioner's name appear on the Republican ballot in the March 17, 1992, primary election as a candidate for judge of the Illinois Supreme Court.

We must determine whether the Judges Act, which provides that a judge be "automatically retired at the expiration of the term in which the judge attains the age of 75" (Ill. Rev. Stat. 1989, ch.

37, par. 23.71), has been drafted with sufficient breadth to bar persons over 75 from running in partisan elections for judicial office.

Anagnost also asks us to make a threshold decision that the Constitution does not empower the General Assembly to prohibit individuals 75 or older from running for office, but rather applies only to the retirement of sitting judges.

We note that article VI, section 11, of the Constitution sets forth the qualifications for the office of judge. This section of the Constitution prescribes three of the qualifications for office: (i) citizenship; (ii) licensure as an attorney; and (iii) residency in the unit which selects the judge. Ill. Const. 1970, art. VI, §11.

There is ample authority that the legislature cannot add or change the qualifications of constitutional officers.[1]

These qualifications, however, must be considered in light of article VI, section 15(a), which empowers the General Assembly to set "a prescribed age" for retirement of judges. Ill. Const. 1970, art. VI, §15(a).

Constitutional provisions which govern a particular subject cannot be viewed in isolation. For example, in *Thies v. State Board of Elections* (1988), 124 Ill. 2d 317, 323, 529 N.E.2d 565, section 7(a), the constitutional provision for election of circuit court judges (Ill. Const. 1970, art. VI, §7(a)), and section 11, the provision for eligibility for judges (Ill. Const. 1970, art. VI, §11), were read together because both sections govern any statutes relating to the circuit courts. Similarly, in the present case, the provisions of the judicial article (section 11 as to qualifications and section 15(a) as to retire-

---

[1]The Illinois Supreme Court struck down a statute which changed the residency requirements stated in article VI, section 11, of the Illinois Constitution, reasoning that "where the Constitution undertakes to prescribe qualifications for office, its declaration is conclusive of the whole matter." (*Thies v. State Board of Elections* (1988), 124 Ill. 2d 317, 325, 529 N.E.2d 565.) Similarly, the supreme court held unconstitutional a statute which sought to prevent a sitting judge from retaining his existing judgeship while running for a different judicial office. (*People ex rel. Nachman v. Carpentier* (1964), 30 Ill. 2d 475, 197 N.E.2d 32.) The *Nachman* court observed that the "rule has become well established that where the office of judge is a constitutional one the General Assembly has no power to prescribe the manner of selection or election of the judge unless authorized by art. VI." (*Nachman*, 30 Ill. 2d at 477, 197 N.E.2d 32.) The same rule obtained in *People ex rel. Hoyne v. McCormick* (1913), 261 Ill. 413, 103 N.E. 1053, where the court held unconstitutional a statute which required a five-year period of residency for Cook County commissioners, notwithstanding the constitutional qualification of a one-year residency requirement.

ment) are not mutually exclusive, but rather must be read together as a rational plan for the regulation of this State's judiciary.[2]

■ However, generally, we will not address the constitutional issue if we are otherwise able to resolve the controversy and the language of the Judges Act allows us to do so without such resort. *In re Application of County Collector* (1989), 132 Ill. 2d 64, 73, 547 N.E.2d 107 ("[a] reviewing court will decide a constitutional question only where it is essential to disposition of the case"); *Exchange National Bank v. Lawndale National Bank* (1968), 41 Ill. 2d 316, 321, 243 N.E.2d 193 ("constitutional questions will not be considered if the cause can be determined on other grounds"); *Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 9, 424 N.E.2d 1239 (a "court should avoid passing upon a constitutional issue if the case can be decided without doing so").

■ The cutting edge of this decision, therefore, is the specific language of the Judges Act. The statute in its entirety is as follows:

"A judge is automatically retired at the expiration of the term in which the judge attains the age of 75. Such judge shall conclude all matters pending before him unless the Supreme Court makes other provisions for the disposition of such matters. This Section shall apply to all Supreme Court, appellate, circuit and associate judges." Ill. Rev. Stat. 1989, ch. 37, par. 23.71.

The trial court suggests that the Illinois General Assembly considered the retirement of sitting judges on the one hand and the election of over-age judges on the other and determined that there was a significant difference between them based upon different dynamics of an adversarial election and a more passive retention process.

The trial court determined that the General Assembly made a rational choice and excluded candidates for judicial office over the mandatory retirement age of 75 from the operation of this Act.

There is some language in the legislative debates to support the proposition that there is a subtle difference between the partisan election of judges and the retention of judges. During floor debate, Representative John J. Cullerton, in support of this proposition, stated "since the public elects judges, they know or have the ability to find out what

---

[2]The 1870 Constitution was amended in 1962, effective in 1964, with a new judicial article (Ill. Const. 1870, art. VI (1962 revision), §§15, 18) that provided sections 11 and 15(a) as they now appear in the 1970 Constitution (Ill. Const. 1970, art. VI, §§11, 15). In contemplation of the 1964 judicial article, the Judges Act was first passed in 1965 and later amended in 1981. Ill. Ann. Stat., ch. 37, par. 23.71, Historical and Statutory Notes, at 22 (Smith-Hurd 1990).

the age of a judge is, and so when they make that decision and elect that judge, that judge should be allowed to fill out his or her term, since that is what the people intended when they elected he or she [*sic*]." 85th Ill. Gen. Assem., House Proceedings, November 16, 1988, at 44 (statements of Representative Cullerton).

The language of the Judges Act leaves little room for an interpretation that it is applicable to any one other than sitting judges.

The Objector asks that we read the word "candidates" into the mandatory retirement provisions of section 1 of the Judges Act so that they will be treated in the same manner as sitting judges. Courts are not afforded that kind of interpretive luxury.

■ Wisely, our Constitution requires that "[a]ll elections shall be free and equal." (Ill. Const. 1970, art. III, §3.) The 1970 Constitution retained this provision unchanged from the 1870 Constitution. (Ill. Const. 1870, art. II, §18.) The purpose of this provision is to insure people (1) access to the ballot (*Bridgewater v. Hotz* (1972), 51 Ill. 2d 103, 112, 281 N.E.2d 317 ("an election is free which gives every qualified voter the right to cast his vote without restraint"); *Craig v. Peterson* (1968), 39 Ill. 2d 191, 195, 233 N.E.2d 345, quoting *People v. Deatherage* (1948), 401 Ill. 25, 37, 81 N.E.2d 581 (this " 'constitutional guarantee gives to every qualified voter the free exercise of his right to cast his vote without suffering any restraint' ")); and (2) access to being on the ballot (*People ex rel. Breckon v. Board of Election Commissioners* (1906), 221 Ill. 9, 77 N.E.2d 321, but see *People ex rel. Lindstrand v. Emmerson* (1929), 333 Ill. 606, 165 N.E. 217; *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 536, 341 N.E.2d 394 ("access to a place on the ballot is a substantial right not lightly to be denied")). Moreover, the rights of candidates and the rights of voters cannot be neatly separated. *Anderson v. Schneider* (1977), 67 Ill. 2d 165, 365 N.E.2d 900.

■ Impairment of a citizen's right to run for elective office should not be by inference even where an acceptable and appropriate legislative goal exists, but rather only by specific language barring access to the ballot and authorized in the Constitution. See *Stout v. Black* (1972), 8 Ill. App. 3d 167, 170, 289 N.E.2d 456 (reasonable limitations may be imposed by the legislature on the eligibility to participate in the electoral process without offending constitutional rights provided in the free and equal clause).

The General Assembly, therefore, has failed to enact appropriate legislation that would bar a person over the age of 75 and otherwise qualified to serve as a judge from running in a judicial election.

In its memorandum, the trial court wrestles with the validity and impact of age-based mandatory retirement. However, the United States

Supreme Court recently determined that the judicial mandatory retirement provisions of the State of Missouri did not violate the equal protection clause of the Federal Constitution because the provision had a rational basis. (*Gregory v. Ashcroft* (1991), 501 U.S. 452, 115 L. Ed. 2d 410, 111 S. Ct. 2395.) *Gregory* affirms the proposition that age is not a suspect classification under the equal protection clause.

The Illinois Compulsory Retirement of Judges Act has been similarly considered in *Trafelet v. Thompson* (7th Cir. 1979), 594 F.2d 623. This case addressed only the possible violation of the equal protection clause of the Federal Constitution and followed prior Federal cases which acknowledged the power of the State to compel judges to retire at a particular age. *Vance v. Bradley* (1979), 440 U.S. 93, 59 L. Ed. 2d 171, 99 S. Ct. 939; *Massachusetts Board of Retirement v. Murgia* (1976), 427 U.S. 307, 49 L. Ed. 2d 520, 96 S. Ct. 2562.

The issue of mandatory retirement has probably not been totally put to rest in Illinois. This case, however, does not provide us with the kind of exhaustive record that would allow us to consider the issue of the constitutionality of the Illinois Compulsory Retirement of Judges Act. As technology changes, as means of evaluating judges' performances become more exacting, as our life expectancies continue to rise, litigation over these matters will continue. Certainly, the legislature has shifted its position from time to time on the appropriate age of retirement. Two generations ago, 65 was considered the retirement age. The original Judges Retirement Act set 70 as the appropriate age and currently the age has been set at 75.

Mandatory retirement is a bitter experience for people who have been active and productive during their lifetime. The prolific artist Marc Chagall visited Chicago in 1974 and when asked why a man well past 80 continued to work so hard, Chagall replied, "If you do not work, you die."

We affirm.

Affirmed.

CERDA, J., concurs.

JUSTICE JIGANTI, dissenting:

Themis Anagnost is 78 years old and seeking to be a candidate for the Illinois Supreme Court. The Illinois Constitution empowers the legislature to "provide by law for the retirement of Judges and Associate Judges at a prescribed age." (Ill. Const. 1970, art. VI, §15(a).) The legislature has acted upon that empowerment and has provided that a

judge will be "automatically retired at the expiration of the term in which the judge attains the age of 75." (Ill. Rev. Stat. 1989, ch. 37, par. 23.71.) In holding that Anagnost may appear on the judicial ballot, the court interprets the statute as applying to sitting judges and not to judges seeking judicial office. (230 Ill. App. 3d at 544.) The only legal rationale given is that the legislature "failed to enact appropriate legislation that would bar a person over the age of 75 *** from running in a judicial election." 230 Ill. App. 3d at 544.

The obverse of the majority's rationale is that the legislature has the power to bar a candidate from seeking judicial office because of retirement age. With this I agree. I disagree with the majority when it very narrowly interprets the statute which states that a judge is "automatically retired" applies only to sitting judges. The holding effectively is that a judge may seek election while beyond retirement age but not retention. While there arguably may be a difference between seeking election and seeking retention, in this context of retirement there is no meaningful distinction. The statute should be interpreted as saying that no person shall seek a judicial office when beyond the retirement age. The holding that a judge beyond retirement age may seek election but not retention brings about an absurd result. The law presumes the legislature does not intend an absurd result. *Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341, 504 N.E.2d 84.